**ENCORE STORES, INC., a California Corporation, Plaintiff,**

v.

**The MAY DEPARTMENT STORES CO., a New York Corporation; Broadway-Hale Stores, Inc., a Delaware Corporation; Bullock's, Inc., a Delaware Corporation, Defendants.**

**No. 197–58–HW.**

United States District Court
S. D. California,
Central Division.

July 7, 1958.

Alvin G. Greenwald, Los Angeles, Cal., Danzansky & Dickey, Raymond Dickey, and Bernard Gordon, Washington, D. C., for plaintiff.

Lawler, Felix & Hall by J. Phillip Nevins, Los Angeles, Cal., for defendant, May Department Store.

MacFarlane, Schaefer & Haun by E. J. Caldecott, Los Angeles, Cal., for Broadway-Hale and Bullock's.

Opinion and Order on Motions as to the Defendants Broadway-Hale Stores, Inc. and Bullock's, Inc.

YANKWICH, Chief Judge.

The various motions of the defendants Broadway-Hale Stores, Inc., and Bullock's, Inc., filed on May 27, 1958, hereto-

fore argued and submitted are now decided as follows:

1. The Motions to Dismiss the various counts of the Complaint are denied.

2. The Motions for a separate statement of claims are denied.

3. The motion for a more definite statement is denied as to Counts 2 and 3 and said motions are granted as to Counts 1, 4, 5 and 6.

Plaintiff is ordered to prepare, serve and file within thirty days after the date of this Order to the defendants Broadway-Hale Stores, Inc., and Bullock's, Inc., a more definite statement of claim as to the above matters as follows:

I. State more definitely with respect to the allegations of Count one:

(a) What acts, if any, the defendants, Broadway-Hale Stores, Inc., and Bullock's, Inc., or either of them, have done constituting the violations alleged in said paragraph 23;

(b) Wherein there is any public injury, or injury to the plaintiff, arising from the acts alleged in said paragraph 23;

(c) What is meant by the phrase "the merchandise hereinbefore described".

II. State more definitely with respect to the allegations of Count four:

(a) Who is referred to in the allegations of paragraph 26, page 8, lines 8, 11 and 13, when the phrase is used "suppliers of the plaintiff"; whether this is intended to be all suppliers or certain particular suppliers;

(b) To whom plaintiff refers in paragraph 26, lines 8 and 9, when he refers to "potential suppliers of the plaintiff";

(c) What acts the defendants, Broadway-Hale Stores, Inc., and Bullock's, Inc., or either of them performed in furtherance of a violation of Section 1 of the Sherman Act, 15 U.S.C.A. § 1, when said Count four, in paragraph 26, alleges no conspiracy and shows no facts describing the conspiracy.

III. State more definitely with respect to the allegations of Count five:

(a) What acts were performed by the defendants, Broadway-Hale Stores, Inc., and Bullock's, Inc., or either of them which interfered with a right of contract of plaintiff, or interfered with any business relationship of plaintiff;

(b) To whom the plaintiff is referring when he refers to "certain of its suppliers", paragraph 27, page 8, lines 20 and 22, or with which suppliers, if any, plaintiff had contracts or did business;

(c) What the plaintiff refers to by the phrase "or by other means", line 25, paragraph 27, page 8;

(d) What, if any, injury resulted to the plaintiff from any alleged interference set forth in paragraph 27, when no contracts are in fact shown to have been breached, nor any discontinuance of any business relationship was in fact shown.

IV. State more definitely with respect to the allegations of Count six:

(a) What acts were performed by the defendants, Broadway-Hale Stores, Inc., and Bullock's, Inc., or either of them, which interfered with a right of contract of plaintiff, or interfered with any business relationship of plaintiff;

(b) To whom the plaintiff is referring when he refers to "certain of the suppliers of the plaintiff", paragraph 28, line 29, page 8 and line 1, page 9, or with which suppliers, if any, plaintiff had contracts or did business;

(c) What, if any, injury resulted to the plaintiff from any alleged interferences set forth in paragraph 28, when no contracts are in fact shown to have been breached, nor any discontinuance of any business relationship was in fact shown.

### Comment

■ The present trend in the higher courts is not to hold pleaders in civil antitrust cases to the certainty which some district judges in the past have sought to establish. See, Radovich v. National Football League, 1957, 352 U.S. 445, 453–

454, 77 S.Ct. 390, 1 L.Ed.2d 456; Nagler v. Admiral Corporation, 2 Cir., 1957, 248 F.2d 319, 322–326; New Home Appliance Center v. Thompson, 10 Cir., 1957, 250 F.2d 881, 884. However, where the alleged monopolistic practices are not illegal per se (as is price fixing of every type) it is necessary that the complaint allege the manner in which the acts of the defendants injuriously affect interstate commerce or constitute acts prohibited by the antitrust laws. This is the view recently expressed by the Court of Appeals for the Ninth Circuit in Klor's, Inc., v. Broadway-Hale Stores, Inc., 255 F.2d 214, in which the Court adopts the view expressed by the Court of Appeals for the Fifth Circuit in Kinnear-Weed Corp. v. Humble Oil & Refining Co., 1954, 214 F.2d 891, and quotes from it.

In that case, speaking of the requirement as to pleading in this respect, the court said:

> "*Public injury alone* justifying the threefold increase in damages and being an indispensable constitutent of a claim for violation of the antitrust laws, *a general allegation of such injury is not sufficient. It is essential that the complaint allege facts from which it can be determined that the conduct charged to be in violation of the antitrust laws was reasonably calculated to prejudice the public interest by unduly restricting the free flow of interstate commerce.*" Kinnear-Weed Corp. v. Humble Oil & Refining Co., supra, at pages 893–894. (Emphasis added.)

In another case, speaking of the absence of proper allegations, the same Court particularized

> "No facts were alleged from which it could be determined as a matter of law that the contemplated purpose, tendency, inherent nature, or result of the conspiracy was that fewer automobiles moved in interstate commerce from Detroit, Michigan, into Colorado, or other destinations; or that less Hudson automobiles were available for purchase in the markets, either in Colorado or elsewhere; or that the quality of the Hudson cars was lowered in any manner. The pleading was completely barren of any allegations from which it could be determined as a matter of law that the contemplated purpose, tendency, inherent nature, or result of the combination was to bring about any diminution in quantity or deterioration in quality of new Hudson automobiles moving in interstate commerce and sold to the public. *Facts were alleged which tended to show that the conspiracy as contemplated and effectuated harmed plaintiff. But that was not enough. In addition, it was essential that the pleading allege facts from which it could be determined as a matter of law that the conspiracy contemplated or tended to restrain interstate commerce, with harmful effect to the public interest.* Failing to contain allegations of that requisite nature, the pleading was insufficient in law to state a cause of action for which relief could be granted under the Act." Feddersen Motors v. Ward, 10 Cir., 1950, 180 F.2d 519, 522. (Emphasis added.)

In the complaint before us no facts other than price fixing—as set forth in counts two and three—are alleged to show the effect upon commerce of any of the acts attributed to the defendants, or that they constituted what the Court in the Klor's case calls "prohibited restraints". The general allegations of the effect on commerce contained in paragraph 36 and 37 are not specific enough to supply these defects. For this reason, the court is of the view that the plaintiff should be required to make his statement of claims more definite. Federal Rules of Civil Procedure, Rule 12(e), 28 U.S.C.

Counts 4, 5 and 6 are also grounded on alleged violation of the Cartwright Antitrust Act of California. (California Business and Professions Code, § 16700 et seq. See especially § 16720 defining combinations and § 16750 giving a right

of civil action to one injured by the doing of the forbidden acts). However, California also has a very definite fair trade policy and has specifically spelled out what shall constitute fair or unfair competition. California Business and Professions Code, §§ 16900–16905.

Sales at a price less than

"the price stipulated in any contract entered into pursuant to this chapter, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby." California Business and Professions Code, § 16904.

So, whether we are dealing with vertical agreements or not, (New Home Appliance Center v. Thompson, supra, 250 F.2d at page 884; Paramount Film Distribution Corp. v. Village Theatre, 10 Cir., 1955, 228 F.2d 721, 725–726) unless the act charged is illegal *per se*, in which case injury to the public will be presumed, the complaint must allege facts from which "public injury" may be reasonably inferred. Otherwise, the acts may not amount to more than refusal to deal or restrictions on dealers of the type which both state and federal law permit. See, Klor's, Inc., v. Broadway-Hale Stores, Inc., supra, 255 F.2d 214.

In this respect California decisions also require that civil complaints under the Cartwright Act show public injury or prohibited restraints. See, Overland Publishing Co. v. Union Lithograph Co., 1922, 57 Cal.App. 366, 375–376, 207 P. 412; Overland Publishing Co. v. H. S. Crocker Co., 1924, 193 Cal. 109, 121, 222 P. 812; Speegle v. Board of Fire Underwriters, 1946, 29 Cal.2d 34, 45–46, 172 P.2d 867; Clark v. Lesher, 1951, 106 Cal.App.2d 403, 409, 410, 235 P.2d 71; A. B. C. Distributing Co. v. Distillers Distributing Corp., 1957, 154 Cal.App.2d 175, 188–192, 316 P.2d 71.

■ Except as to *price fixing*, the allegations of the complaint showing concert of action between the defendants are nebulous. Grant that an inference of conspiracy may be drawn from "parallelism" of action, it is established law and recognized economic doctrine that *identical* situations arising in the field of commerce may lead to *identical* actions by those concerned without *any agreement or concert*. (See the writer's opinion in United States v. 20th Century-Fox Film Corporation, D.C.Cal.1955, 137 F.Supp. 78, 111–115.) Certain allegations in the complaint would warrant the inference that what each defendant was doing was to protect itself against the undercutting of prices by the plaintiff by ascertaining the price at which the plaintiff was offering certain brand name merchandise in the apparel line, which they, by their fair trade agreements with the manufacturers, were bound to sell at a definite price and which is not forbidden either by state or federal law. (See allegations of paragraph 29, especially subdivision (a), and paragraph 31.)

Significantly, what is charged in paragraph 31 to the so-called "suppliers-co-conspirators" is the doing of a legal act, namely, of refusing to supply a person *who will not be bound* by fair trade agreements. In truth, what the plaintiff seeks is to be protected from the effects of Section 16904 of the California Fair Trade Act by turning the prohibition against the act of selling into a basis for an action by competitors for seeking protection against underselling. Grant that a boycott is illegal. What the plaintiff really complains of is exclusion from the market. See, Northern Pacific Railway Co. v. United States, 1958, 356 U.S. 1, 5–7, 78 S.Ct. 514, 2 L.Ed.2d 545. This, however, is a question of fact.

Calling the action of the defendants and their alleged co-conspirators a "boycott" of the plaintiff no more settles the problem than the similar attempt of the Government in United States v. 20th Century-Fox Film Corporation, supra, to call the refusal of the motion picture companies to sell films for television "a boycott".

The conclusion that there was no "boycott" was reached in that case after a trial. However, the similarity of con-

tention is adverted to in order to point to the fact that the defendants here are entitled to know definitely what (1) acts each of them did, (2) whether they did any act in concert, (3) what supplies were involved, (4) what contracts, if any, the plaintiffs had with the suppliers which obligated them to sell them the goods upon their own terms without any restriction as to resale price, (5) what dresses or apparel were involved, and (6) which contracts were cancelled. Grant that the plaintiff need not particularize the damage he suffered from each particular act for that is a matter of proof at the trial, nevertheless the defendants, in order to properly defend their actions, must know with what specific illegal acts they are charged. For, as stated by the Court of Appeals in the Klor's case, supra.

"If a business transaction and the effect and object of such transaction between two or more persons is lawful, then the transaction cannot be nor can it create an unlawful conspiracy. If 'X Company' a manufacturer, refuses to sell to Klor's, Inc., and sells to 'Y Company', a retailer who also agrees to buy from 'X' as long as 'X' does not sell to Klor's, more than one person is involved, and they have agreed not to sell, but their act is not necessarily illegal. To a minute degree, any refusal to sell is a restraint of trade, in the ordinary sense; but it is not necessarily a restraint in the Sherman Act sense. Some restraints of trade are reasonable, and hence not violative. Others are not in, nor do they affect, interstate commerce, and hence are not violative. Others are so remote in their effect on the public at large as not to be restraints for Sherman Act purposes." Klor's, Inc., v. Broadway-Hale Stores, Inc., supra, 255 F.2d 214, 230.

■ Hence the conclusion that while the motion to dismiss should be denied, the plaintiffs should be required, in compliance with Rule 12(e), Federal Rules of Civil Procedure, to make the statements of Counts 1, 4, 5 and 6 and certain specific paragraphs more certain before the defendants file any responsive pleading. This is especially true in view of the fact that in this Circuit the requirement that a pleading set forth a "claim showing that the pleader is entitled to relief", Rule 8(a), is interpreted as calling for the statement of a "cause of action", as that term has always been understood in the law of code pleading. Sidebotham v. Robison, 9 Cir., 1955, 216 F.2d 816, 831.[1]

[1]. Note: For a better understanding of the ruling the entire Complaint is attached.

(Title of Court and Cause)
No. 197–58 HW.
Filed March 4, 1958.

Complaint Under the Sherman and Clayton Acts for Treble Damages, Under the Law of Unfair Competition for Damages and for Injunction Relief.

The plaintiff above named brings this cause of action against the defendants above named and complains. and alleges as follows:

Jurisdiction and Venue

1. (A) Jurisdiction is conferred on this Court by Sections 4 and 16 of the Act of Congress of October 15, 1914,. entitled "An Act To supplement existing laws against unlawful restraints and monopolies and for other purposes", as amended and supplemented (15 U.S.C.A. §§ 15, 26), said Act being commonly known as the Clayton Act, and by Section 1337 of Title 28 of the United States Code, for alleged violations of Section 1 of the Act of Congress of July 2, 1890, entitled "An act to protect trade and commerce against unlawful restraints and monopolies" (15 U.S.C.A. § 1) and Section 2 of the Clayton Act aforesaid (15 U.S.C.A. §. 13).

(B) Jurisdiction is also conferred by the fact that there exists diversity of citizenship by and between plaintiff and each of the defendants, and defendants have engaged in unfair methods of competition, have wilfully and maliciously interfered with the plaintiff's right of contract and right to do business, and have maliciously in-

duced certain of plaintiff's suppliers to breach their contracts with plaintiff and not to continue their business relations with plaintiff, all in violation of the laws of California, and plaintiff has suffered injuries and damages thereby in excess of $3,000.

(C) Each of the defendants transacts business within the Southern District of California and/or may be found herein and/or has agents herein, and the venue of this Court is thereby duly established.

### Description of Plaintiff and its Business

2. Plaintiff is a corporation duly organized and existing under the laws of the State of California.

3. Plaintiff's principal place of business is located at 855 South Broadway, City and County of Los Angeles, and its offices are located at 1234 South Main Street in said City and County.

4. Plaintiff is primarily engaged in the business of operating concessions to sell women's, children's, and infants' ready-to-wear clothing and accessories at retail in discount department stores. Plaintiff to date has operated and presently operates concessions in the Standard Discount Store located at 855 South Broadway, said store being close by each of the defendants' downtown locations in Los Angeles, and at 7724 Van Nuys Boulevard, Van Nuys, California.

5. Plaintiff, at each of the concessions which it operates, offers for sale nationally-advertised brands of women's, children's, and infants' ready-to-wear clothing and accessories at prices substantially lower than the prices at which the same merchandise is offered by the defendants herein in the City and County of Los Angeles and at prices substantially lower than the prices at which the same merchandise is sold in the competitive vicinity of the plaintiff's location. The plaintiff has been able to offer its merchandise at these substantially lower prices because of (a) its lesser costs of doing business resulting in part from its elimination of certain overhead costs and (b) its willingness to add a lower markup. In the absence of the unlawful conspiracy between the defendants and suppliers of the defendants (who are or were also suppliers of the plaintiff), plaintiff, because of its lower prices on nationally-advertised brands of merchandise, would have obtained its fair share of consumer patronage in the downtown Los Angeles area and in the other areas where plaintiff sells and would have been able to compete with defendants in the marketplace unfettered by unfair methods of competition.

6. Operation of plaintiff's concessions requires many sources of supply and requires nationally-advertised-brand merchandise which has achieved consumer acceptance.

7. In the course of its business plaintiff purchases such merchandise for resale from suppliers in various localities in the United States, including but not limited to New York, N. Y., Philadelphia, Pa., and California.

8. During 1957 plaintiff leased concessions in the Standard Discount Store at 855 South Broadway in Los Angeles and at 7724 Van Nuys Boulevard in Van Nuys, for retail discount sales of women's, children's, and infants' ready-to-wear clothing and accessories.

9. During 1957, plaintiff commenced business at both of its locations and has been continuously engaged in such business since that date.

10. The premises occupied by the plaintiff are properly located and adequately equipped for the operation detailed hereinbefore, i. e., under-selling concessions for women's, children's, and infants' ready-to-wear clothing departments in discount department stores.

11. The principal officers of plaintiff have many years of experience in the operation of this type of business and are fully qualified to operate such concession departments.

### Description of Department Store Defendants

12. Defendant, The May Department Stores Company, Inc. (hereinafter sometimes called May Company), is a corporation organized and existing under the laws of the State of New York. In the City of Los Angeles its downtown store is located at 801 South Broadway. It also has branches at 8067 Wilshire Boulevard, 4005 South Crenshaw, 5100 Lakewood Boulevard, 5150 Laurel Canyon, and 2831 Garvey Boulevard. In addition to this, defendant May Company operates other stores under the May Company's trade style in Denver, Colo., and Baltimore, Md.; operates under the trade styles of Daniels and Fisher in Denver, Colo.; Taylors and Famous-Barr in Cleveland, Ohio; O'Neils in Akron,

Ohio; Strauss-Hirshberg in Youngstown, Ohio; Famous-Barr in St. Louis, Mo.; and Kaufmann's in Pittsburgh, Pa.

13. For the fiscal year ending January 31, 1957, the defendant May Company had gross sales in excess of $520,000,000 in all of its stores.

14. Defendant May Company is engaged in the purchase and sale of some of the same goods as those purchased and sold by plaintiff herein.

15. The defendant Broadway-Hale Stores, Inc. (hereinafter sometimes called Broadway) is a corporation organized and existing under the laws of the State of Delaware. In Los Angeles its main store is located at 401 South Broadway, and it has branches in Pasadena, Crenshaw, Hollywood, Westchester, Van Nuys, and Anaheim. Broadway also operates stores in San Francisco. This defendant, in all of its branches for the year ended July 31, 1957, had sales in excess of $154,000,000.

16. Defendant Broadway is engaged in the purchase and sale of some of the same goods as those purchased and sold by the plaintiff herein.

17. Defendant Bullock's, Inc. (hereinafter sometimes called Bullock's) is a corporation organized and existing under the laws of the State of Delaware. Its downtown store in Los Angeles is located at Broadway, Hill and 7th Street; in addition, it has stores at 3050 Wilshire Boulevard and at 601 South Westmoreland Avenue. It also operates other department stores under the trade name I. Magnin and Company. For the year ended February 2, 1957, this defendant had gross sales in excess of $138,000,000.

18. Defendant Bullock's is engaged in the purchase and sale of some of the same goods as those purchased and sold by the plaintiff herein.

### Description of Known Co-Conspirators

19. Mutual Buying Service (hereinafter sometimes called Mutual) is an organization with its principal place of business at 11 West 42nd Street, New York, N. Y. At the present time plaintiff is without knowledge as to whether Mutual is a corporation or a partnership but avers that this organization is the purchasing agent for defendant Broadway and others in the New York market area. Mutual is named as a co-conspirator in this complaint but is not herein named a defendant.

20. Associated Merchandising Corporation (hereinafter sometimes called AMC) is a corporation with its principal place of business at 1440 Broadway, New York, N. Y. At the present time plaintiff does not know the place of incorporation of this organization but avers that it is the purchasing agent for defendant Bullock's and others. AMC is named as a co-conspirator in this complaint but is not herein named a defendant.

21. Sostman Mercantile Company (hereinafter sometimes called Sostman) is a corporation with its principal place of business at 1440 Broadway, New York, N. Y. At the present time plaintiff does not know the place of incorporation of this organization but avers that it is the purchasing agent for defendant May Company. Sostman is named as a co-conspirator in this complaint but is not herein named a defendant.

22. Acts alleged in this complaint to have been done by any corporate defendant, or any corporate co-conspirator not named as a defendant, were authorized, ordered, and/or done by officers, agents, servants, or employees of said corporation.

### The Unlawful Agreement, Plan Combination, and Conspiracy Count One

23. The defendants, the named co-conspirators, and other co-conspirators unknown have violated and are now violating Section 1 of the Sherman Act (15 U.S.C.A. § 1) in that they have combined together and/or have agreed, contracted, planned, and/or conspired to unlawfully restrain and substantially lessen the competition in the sale of the merchandise hereinbefore described in interstate commerce.

### Count Two

24. Beginning on or about the 14th day of November, 1957, and up to and including the date of the filing of this complaint, the defendants and the named co-conspirators and/or other co-conspirators unknown have violated and are now violating Section 2(f) of the Clayton Act as amended by the Robinson-Patman Act [15 U.S.C.A. § 13(f)] in that they have knowingly induced and received from certain suppliers and co-conspirators a discrimination in price prohibited by Section 2 of the Clayton Act as amended by

the Robinson-Patman Act [15 U.S.C.A. § 13(a)–(f)].

## Count Three

25. Defendants and the named co-conspirators and/or other co-conspirators unknown have violated and are now violating Section 1 of the Sherman Act (15 U.S.C.A. § 1) in that they have combined together and have agreed, planned, and/or conspired to unlawfully fix and maintain prices in the hereinbefore described interstate commerce.

## Count Four

26. Defendants have engaged in unfair methods of competition in that they have caused suppliers and potential suppliers of the plaintiff to refuse to sell to the plaintiff, either by the use of threats that the defendants would withdraw their patronage from suppliers selling merchandise to the plaintiff, or by other means, thus inducing, causing, or organizing a commercial boycott by suppliers of the plaintiff, in violation of the laws of California and of Section 1 of the Sherman Act aforesaid.

## Count Five

27. Defendants have committed actionable torts in that they have wilfully and maliciously interfered with (a) the right of contract between plaintiff and certain of its suppliers and/or (b) the continued business relationship between plaintiff and certain of its suppliers, either by use of the threat that defendants would withdraw their patronage from any supplier who continued to sell goods, wares, and merchandise to the plaintiff herein, or by other means, in violation of the laws of California.

## Count Six

28. Defendants have committed actionable torts in that they have wilfully and maliciously induced certain of the suppliers of the plaintiff (a) to breach their contracts with plaintiff and/or (b) to discontinue their business relations with the plaintiff, in violation of the laws of California.

## Specific Examples of Illegal Acts

29. The defendants and the named co-conspirators and/or other co-conspirators unknown, pursuant to agreement, plan, combination, and/or conspiracy, and by other divers means, methods, and acts, sought and continue to seek to accomplish the illegal ends described in Paragraphs 23 through 28 of this complaint; among such acts were the following:

(A) Immediately upon plaintiff's opening of its concession in the Standard Discount Store at 855 South Broadway in Los Angeles and at 7724 Van Nuys Boulevard in Van Nuys, the defendants caused their buyers and merchandise managers to check the merchandise being offered for sale to the consuming public by the plaintiff to ascertain the price for which plaintiff was offering such goods and to ascertain the brand names and sources of supply of the plaintiff. Thereupon, many of the sources of supply of the plaintiff, located in California, in New York, N. Y., in Philadelphia, Pa., and in other States beyond the borders of California, were told that they would be subjected to an economic boycott and no further purchases would be made from them by the defendants if their merchandise was not immediately removed from plaintiff's concession at 855 South Broadway or if they continued to sell merchandise to the plaintiff.

(B) Other suppliers common to both plaintiff and one or more of the defendants were told by the defendants and/or the co-conspirators that unless plaintiff's prices of nationally advertised and branded identical merchandise were raised to the higher prices for which such merchandise was being sold by one or more of the defendants, these sources of supply would have to effectuate a removal of this identical merchandise from the plaintiff's concession and cancel subsequent orders from the plaintiff.

(C) Other sources of supply were told by the defendants and/or the co-conspirators that they would have to give defendants rebates on merchandise already purchased by said defendants so that defendants could compete price-wise with the plaintiff and still maintain the customary high markups and profit margin of said defendants.

(D) The defendants in their Los Angeles stores and other varied branch stores located throughout the United States have the concentrated, mass purchasing power of hundreds of millions of dollars and have, along with the co-conspirators, induced, persuaded, coerced, compelled, and/or caused many of their suppliers, who also sold to plaintiff, not to continue to sell to the plaintiff upon the threat by the defendants and the co-conspirators that

they would immediately cease doing business with such suppliers who would dare to continue to sell to the plaintiff. By this means defendants and co-conspirators have organized and induced a boycott.

(E) Each of the defendants knew specifically and generally the activities of the other defendants in attempting to foreclose the plaintiff from its normal and regular sources of supply for nationally-advertised "first run" brand merchandise, and it was the specific and malicious purpose and intent of each of the defendants, in taking the hereinbefore described actions, to (a) eliminate plaintiff as a competitor and (b) fix and maintain prices on the nationally-advertised merchandise being offered for sale by the various defendants.

30. On information and belief plaintiff avers that (a) defendants knowingly induced and received rebates from certain suppliers which were not available to plaintiff and other persons in competition with the defendants, which rebates unlawfully discriminated against the plaintiff, and (b) said rebates were calculated on the difference between the prices at which plaintiff sold its merchandise and those prices at which defendants normally sold the identical merchandise.

31. Each of the supplier co-conspirators knew of the activities of the other supplier co-conspirators, or some of them, and the defendants, or some of them, in their conduct and activities to foreclose plaintiff from its sources of supply for nationally-advertised merchandise. It was with the specific and malicious purpose and intent of each of the defendants and co-conspirators that the plaintiff be eliminated as a competitive entity, that the aforesaid actions were taken.

### Effects of the Illegal Acts

32. The effect of the defendants' illegal acts and conduct aforesaid and of other acts in furtherance thereof, some of which are described in Paragraphs 29 through 31 hereinbefore, has been to block completely or to unreasonably restrain plaintiff from purchasing, or purchasing competitively, or selling, or selling competitively, merchandise of the kind, character, quality, and brand necessary for the successful operation by the plaintiff of its women's, children's, and infants' ready-to-wear clothing and accessories concessions, which are in competition with the defendants herein in the sale of similar merchandise in similar departments.

33. By reason of the foregoing and other acts of the defendants and co-conspirators named herein and other co-conspirators unknown, an illegal boycott exists, both within and beyond the borders of the State of California, among certain corporations, companies, firms, or persons, who in the normal course of events would be suppliers to this plaintiff, and consequently interstate commerce and trade in the purchase and sale of many types of merchandise have been illegally restrained.

34. The actual and potential competition to the defendants by this plaintiff has been unreasonably restrained.

35. Prices for the sale of certain women's, children's, and infants' ready-to-wear clothing and accessories have been maintained and fixed at arbitrary and non-competitive levels.

36. Interstate commerce and trade in the purchase, sale, and distribution of those goods commonly sold in women's, children's, and infants' ready-to-wear clothing and accessories departments have been illegally and unreasonably restrained.

### Public Injury

37. Both the public at large and the consuming public in the marketing area of the City and County of Los Angeles, California, have been adversely affected by each and every illegal act of the defendants as set forth hereinbefore, in that such acts unduly restrained the free flow of interstate commerce.

### Damages and Irreparable Injury to Plaintiff

38. As a result of the aforesaid illegal acts and conduct of the defendants and the named co-conspirators and other co-conspirators unknown, the plaintiff has suffered loss and damages in the amount of $200,000.

39. Unless defendants are restrained and enjoined against continuing and carrying out their illegal acts and/or agreements, plans, combinations, and/or conspiracies to fix and maintain prices and/or in restraint of trade, and/or their illegal intentional and malicious interference with plaintiff's right of contract, and/or their intentional, wilful, and malicious inducing of breach of contract of vari-

ous suppliers with the plaintiff, and/or their intentional and malicious interference with the continued business relations between the plaintiff and its suppliers, the aforesaid illegal conduct of the defendants, which was calculated and intended to destroy the business of plaintiff, (a) will do so, (b) will further irreparably injure the plaintiff, (c) will restrain and/or continue to restrain interstate trade and commerce, and (d) will continue to illegally interfere with contracts and rights of contracts and continued business relations between plaintiff and its suppliers or potential suppliers,—all as hereinbefore alleged.

### Prayers for Relief

Wherefore, the plaintiff prays as follows:

(a) That summonses be issued and directed to each of the defendants above named, commanding them to appear and to answer the allegations contained in this complaint and to abide by and perform such orders and decrees as the Court may enter in the cause.

(b) That (1) the contracts, combinations, and the conspiracy of the defendants and co-conspirators and other co-conspirators unknown, each with the other, and (2) the restraints of interstate trade and commerce, and (3) the attempts to fix and the fixing of prices of goods sold in department stores in the City and County of Los Angeles and its marketing area, and (4) the inducing of rebates and/or discriminatorily lower prices by the defendants from certain of their suppliers who also sell to the plaintiff,— all be declared illegal and enjoined as violative of the Sherman Act and Clayton Act aforesaid; and that (5) the actions of defendants in inducing breach of contracts by suppliers of the plaintiff, and (6) the action of the defendants in interfering with the right of contract and/or the continued business relations of plaintiff with its suppliers or potential suppliers, be declared illegal and enjoined as violative of the law of unfair competition of the State of California.

(c) That preliminarily until final hearing and permanently thereafter, the defendants and each of them, and each and all of their respective officers and directors, agents, servants, and employees, and all persons acting or claiming to act on their behalf, and all persons in active concert or participation with them, or any of them, be enjoined and restrained:

(1) From inducing, persuading, coercing, threatening, compelling, or causing, directly or indirectly, any supplier of plaintiff or any potential supplier of plaintiff not to deal with the plaintiff;

(2) From inducing, persuading, coercing, threatening, compelling, or causing, directly or indirectly, any supplier of plaintiff who also supplies goods to the defendants, or any of them, to sell goods, wares, and merchandise to the defendants or any of them at a lower price than the same or similar goods, wares, and merchandise are sold to the plaintiff;

(3) From inducing, persuading, coercing, threatening, compelling, or causing, directly or indirectly, any supplier of plaintiff who also supplies goods to the defendants, or any of them, to grant to the defendants or any of them any discount, rebate, allowance, or advertising service charge over and above any discount, rebate, allowance, or advertising service charge available to plaintiff at the time of such transaction in respect of a sale of goods of like grade, quality, and quantity;

(4) From entering into, or continuing with, any contract, combination, or conspiracy between defendants, or any of them, and any persons, firms, or corporations, by which defendants or any of them agree, expressly or impliedly, to maintain or fix retail prices on any goods sold in interstate commerce;

(5) From attempting to eliminate the plaintiff as a competitor by any illegal means;

(6) From inducing suppliers of plaintiff herein to breach their contracts with plaintiff or inducing suppliers of plaintiff not to continue their business relations with plaintiff.

(d) That the defendants be ordered to pay the plaintiff treble the amount of loss and damages sustained by plaintiff.

(e) That if this Honorable Court finds the defendants to have violated only the California law of unfair competition, then in that event defendants be ordered to pay the plaintiff the amount of loss and damages sustained by plaintiff plus $200,000 as exemplary damages.

(f) That this Honorable Court allow to the plaintiff and that the defendants pay the full costs of this suit and

include as part thereof a reasonable attorneys' fee for the services of plaintiff's attorneys.

(g) That the plaintiff be afforded such other and further relief as this Honorable Court shall deem just and proper.

## Ruling and Order on Motions as to the May Department Stores Co.

YANKWICH, Chief Judge.

The various motions of the defendant May Department Stores Co., filed May 27, 1958, heretofore argued and submitted, are now decided as follows:

(a) The Motions to dismiss the various Counts of the Complaint are denied.

(b) The Motions for a separate statement of claims and to join additional defendants are denied.

(c) The Motions for a more definite statement are denied as to Counts 2 and 3 and said motions are granted as to Counts 1, 4, 5, 6, and Paragraphs 29 and 31.

Plaintiff is ordered to prepare, serve and file within 30 days after the date of this Order, to the defendant May Department Stores Co. a more definite statement as to the above matters as follows:

I   State more definitely with respect to the allegations of Count One:

(a) To what competition or agreement or contract or plan or plans or conspiracy plaintiff refers.

(b) To what merchandise plaintiff refers.

(c) What is meant by "and/or".

II   State more definitely with respect to the allegations of Count Four:

(a) Who are the suppliers referred to in Count Four.

(b) Who are the "potential suppliers of the plaintiff" referred to in Count Four.

(c) What is meant by "or other means".

(d) Whether this defendant acted as alleged in Count Four.

(e) Whether it is claimed that this defendant acting individually, acted as alleged in Count Four, or whether this defendant acted as alleged in Count Four in unison with another defendant or other defendants.

III   State more definitely with respect to the allegations of Count Five:

(a) Whether this defendant committed any tort, actionable or otherwise.

(b) To whom the phrase "certain of its suppliers" refers.

(c) Whether the interference alleged in Count Five was with the "right of contract" or the "continued business relationship".

(d) Whether this defendant acted as alleged in Count Five.

(e) What is meant by "and/or".

IV   State more definitely with respect to the allegations of Count Six:

(a) Whether this defendant committed any tort, actionable or otherwise.

(b) To whom the phrase "certain of the suppliers of the plaintiff" refers.

(c) Whether said count charges a breach of contract or discontinuance of business relations with the plaintiff.

(d) What is meant by "and/or".

V   State more definitely with respect to the allegations of Paragraph 29:

(a) What is meant by "and/or".

(b) What is meant by "other divers means, methods and acts".

(c) To what illegal ends plaintiff refers.

VI   State more definitely with respect to the allegations of Subdivision A of Paragraph 29:

(a) To whom "many of the sources of supply of the plaintiff's" refers.

(b) Who was or who were told by whom that "they" would be subjected to an economic boycott.

VII State more definitely with respect to the allegations of Subdivision B of Paragraph 29:

(a) To whom the phrase "other suppliers" refers.

(b) What is meant by "and/or".

(c) Whether the "other suppliers" were told as alleged in Subdivision B by this defendant.

VIII State more definitely with respect to the allegations of Subdivision C of Paragraph 29:

(a) To whom the phrase "other sources of supply" refers.

(b) What is meant by "and/or".

(c) Whether the "other sources of supply" were told as alleged in Subdivision C by this defendant.

IX State more definitely with respect to the allegations of Subdivision D of Paragraph 29:

(a) What is meant by "and/or".

(b) To whom "many of their suppliers" refers.

X State more definitely with respect to the allegations of Subdivision E of Paragraph 29:

(a) Whether the phrase "various defendants" refers to this defendant.

XI State more definitely with respect to the allegations of Paragraph 31 of this Complaint.

(a) To whom or what does the phrase "or some of them" refer.

### Comment

Reference is here made to the Comment attached to the Order dated this day ruling on similar motions of Broadway-Hale Stores, Inc., and Bullock's, Inc., ante, p. 83, which embodies the grounds and reasons for decision equally applicable to this defendant.

Hence the ruling above made.