**MORAINE PRODUCTS, Plaintiff and Counter-defendant,**

**v.**

**ICI AMERICA, INC. (as successor to Atlas Chemical Industries, Inc., and Stuart Pharmaceutical Co.), et al., Defendants and Counter-plaintiffs,**

**v.**

**J. Alfred RIDER, M. D., et al., Third-party Defendants to the Counter-claims.**

**No. 70 C 2350.**

United States District Court, N. D. Illinois, E. D.

Jan. 11, 1974.

Allen H. Gerstein, Merriam, Marshall, Shapiro & Klose, Chicago, Ill., for plaintiff.

Dugald McDougald, Chicago, Ill., Arthur G. Connolly and William Wier, Jr., Wilmington, Del., W. Donald McSweeney, Schiff, Hardin, Waite, Chicago, Ill., for defendants.

## DECISION ON PENDING MOTIONS

McMILLEN, District Judge.

The above-entitled cause actually consists of several separate but somewhat interrelated actions:

1. Moraine has filed a Second Amendment Complaint consisting of five counts against the Atlas defendants, the first three counts of which are also against the Plough defendants.

2. Plough and its wholly owned subsidiary Plough Laboratories Inc. have answered the three counts and have pleaded seven (7) affirmative defenses. They also have filed a counterclaim of two counts against plaintiff and three individual third-party defendants.

3. Atlas and its wholly-owned subsidiary Stuart Pharmaceutical Co., now collectively known as ICI America, Inc., have filed an answer to all five counts of the complaint and have filed nine (9) affirmative defenses. They have also filed five counterclaims against plaintiff and the three individual third-party defendants.

This case now comes on to be heard on a series of contested motions filed by all parties. The Plough defendants have filed a motion to dismiss the Second Amended Complaint or for summary judgment thereon. For reasons to be stated hereinafter, we will deny the motions of these defendants as to the three counts against them. Plaintiff has filed

a motion to strike the fifth affirmative defense of these defendants and this motion will be denied. Plaintiff and the third party defendants have also moved to dismiss the counterclaims of the Plough defendants, and we will grant this motion as to the second counterclaim but allow the first counterclaim to stand.

Plaintiff has also moved to strike affirmative defenses 1, 4, 8 and 9 in the Answer of the Atlas defendants (now known as ICI America, Inc.) which motion we will grant except as to the 8th affirmative defense. Finally plaintiff has moved to dismiss the Atlas counterclaims and we will grant this motion, except as to the second and fifth counterclaims. The three individual third-party defendants have joined in and are the beneficiaries of plaintiff's motions.

The legal basis for most of our rulings is that many of the issues in this case have recently been decided as between Moraine and Atlas in the case of Atlas Chemical Industries Inc. v. Moraine Products, Inc., 350 F.Supp. 353 (E.D.Mich.1972). We have been advised by the parties that a final and appealable judgment was entered in that case on November 5, 1973 which will shortly be the concern of the Sixth Circuit Court of Appeals. Other issues have been decided in the case at bar by our predecessor judge, and we will not undo his careful work as reported at 172 U.S. P.Q. 214 and 217 and in an unpublished opinion dated January 11, 1973. Finally, a complaint for infringement filed in this district, Moraine Products v. Block Drug Co. and Plough Inc., 69 C 1471, was dismissed without prejudice on April 23, 1973, and we can give no conclusive weight to the interim decisions made by a different fellow judge in that case.

The immediate problem in the case at bar is to eliminate issues which have already been litigated between the parties and put an end to the pleading stage of the controversy. To some extent, previously litigated issues can be determined on the pleadings, but some of this determination must await trial or at least until the forthcoming pretrial order is complied with. Also a distinction apparently exists between issues which have been litigated or settled and damages which have been awarded to the plaintiff, and this distinction cannot be made on the pleadings. Finally, the problem is complicated by the cross-allegations that every party participated in one way or another in Atlas' fraud but which the decision in Michigan did not establish against any party directly except the Atlas defendants.

The plaintiff Moraine Products, Inc. is the original assignee of Rider patent # 3,422,189 filed in 1959 and issued in 1969. The claims of the Rider patent cover a method for treating stomach gas or flatulency by a specific antifoam composition which is manufactured by Dow-Corning Corporation. Plaintiff is engaged solely in the business of licensing the rights under this and related foreign patents and does not manufacture or sell any products. Pursuant to settlement of a suit in this District filed by Moraine against Atlas in 1961, plaintiff granted an exclusive option to Atlas in 1962 to sub-license the Rider patent for a royalty of 5%, of which Moraine received 2%. This option had been preceded by a 1960 royalty agreement which was rescinded as part of the settlement.

Each of the defendants is engaged in the business of making and selling deflatulents. Plough Laboratories is the assignee of Feinstone Reissue patent No. 25,505 issued in 1962 as a reissue of No. 2,951,011 issued in 1960 which also covers a method for relieving stomach gas. According to Moraine's present complaint, the claims of the Rider and Feinstone patents overlap to such an extent that a licensee cannot manufacture under Rider without a license under Feinstone. The defendants, as well as two alleged co-conspirators not named as defendants (Block Drug Company and its subsidiary Reed & Carnick Corp.), are the sole licensees under the Feinstone patent.

Count I of Moraine's Second Amended Complaint alleges that defendants conspired to limit the number of licensees under the Feinstone patent and thereby to restrict Moraine's marketing of rights under the Rider patent. Moraine claims that this alleged conspiracy has prevented it from acquiring other licensees for its Rider patent and from earning any other royalties, in violation of Sec. 1 of the Sherman Act (15 U.S.C. § 1).

Count II alleges that the facts in Count I constitute an unlawful interference with plaintiff's business and contractual relationships. Count III alleges that the defendants' acts resulted in injury to the public and to competition, incorporating all of the allegations of Count I. Judge McGarr has already sustained the legal sufficiency of these counts, but subsequently Moraine has prevailed in Atlas' declaratory judgment action in the Eastern District of Michigan (supra p. 3).

■ The key question raised by the Plough defendants' motion is whether Moraine suffered any compensable injury from the conspiracy alleged in Counts I, II and III of the Second Amended Complaint. We find and conclude that Moraine may have suffered such injury as the result of the action by the Plough defendants in the alleged conspiracy and that a geninue issue of material fact exists on this issue. The patent applicant Rider and his assignee Moraine were admittedly in a position of trust and confidence toward the Patent Office and owed a duty to truthfully disclose all material facts concerning this application. Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 818, 65 S.Ct. 993, 89 L.Ed. 1381 (1945). Atlas, because of its preexisting option agreement, was a potential exclusive licensee of the Rider patent and owed the same duty of full disclosure to the Patent Office, Charles Pfizer & Co., Inc. v. F. T. C., 401 F.2d 574, 583 (6th Cir. 1968). However, the Michigan court specifically found that Moraine did not know of or

participate in Atlas' fraud, and Moraine was allowed to recover from Atlas for its expenses in enforcing the invalid Rider patent. By the same token, Moraine could have retained any royalties received from the licensing of the fraudulent patent up to the date of the invalidity. Troxel Mfg. Co. v. Schwinn Bicycle Co., 465 F.2d 1253 (6th Cir. 1972). Therefore it could have suffered damages from the alleged conspiracy.

Plough's first counterclaim against Moraine and against the individual third party defendants, Byrell Triggs and Charles Kramer as officers and stockholders of Moraine, and J. Alfred Rider, the inventor of the process covered by Moraine's patent, alleges that the counter-defendants engaged in a series of fraudulent acts in order to procure the Rider patent. They then allegedly conspired to exploit the patent, knowing that it had been fraudulently procured, by filing the infringement action in this District against Plough and by filing the present action. Plough claims that it has been damaged by the expenses it has incurred in defending against these claims. Plough's second counterclaim alleges that the counter-defendants' fraudulent conduct constitutes a violation of Sec. 2 of the Sherman Act and seeks treble damages.

■ Moraine argues that the two counterclaims are barred by the principle of collateral estoppel arising out of the prior infringement suit brought in this District by Moraine against Plough and its Feinstone licensees (supra p. 3). In order for a prior judgment between two parties to constitute collateral estoppel, however the judgment must be final and on the merits. Canaan Products Inc. v. Edward Don & Co., 388 F.2d 540 (7th Cir. 1968). Moraine's infringement suit against Block et al. was settled and dismissed without prejudice. Such a judgment is not on the merits, even though the trial judge made some preliminary findings against Moraine. In re McDermott, 115 F.2d 582, 584 (7th Cir. 1940); Brunswick Corp. v. Chrysler Corp., 287 F.Supp. 776, 777–778 (E.D.

Wis.1968). Moreover the infringement suit did not involve the question of Moraine's fraud, therefore that suit is no bar to that issue.

■ Moraine also contends that each of Plough's counterclaims fails to state a claim for relief under F.R.Civ.P. 12(b)(6). The essence of the first counterclaim is that Plough was forced to incur the expense of defending against the infringement claims brought against it by Moraine; these claims were based solely on a patent procured by Atlas' fraud and other misconduct. This is sufficient to support Plough's right to recover such expense, even though Atlas required Moraine to sue. Hartford-Empire Co. v. Shawkee Manufacturing Co., 163 F.2d 474, 497 (3rd Cir. 1947); Skelly Oil Co. v. Universal Oil Products, 338 Ill.App. 79, 86 N.E.2d 875 (1949).

■ We agree with Moraine that Plough's second counterclaim fails to state a claim for relief, however. In Walker Process Equipment, Inc. v. Food Machinery and Chemical Corp., 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965), the Supreme Court held that the enforcement of a fraudulently-procured patent can constitute a violation of § 2 of the Sherman Act. However, in order to allege such a theory, the plaintiff must also establish the relevant market for the patent and the exclusionary power of the patentee within that market. *Id.*, 382 U.S. at 177. Ecko Products, Inc. v. Dare Plastics, 173 U.S.P.Q. 664, 666 (S.D.Ohio 1972). Plough has failed to allege both of these basic elements of this cause of action. The Plough defendants' second counterclaim therefore fails to state a claim for relief. under F. R.Civ.P. 12(b)(6).

■ Counts IV and V of the pending Complaint are brought only against the Atlas defendants. Count IV charges Atlas was a violation of Sec. 2 of the Sherman Act by fraudulently and wilfully withholding material information from Moraine and the Patent Office while encouraging Moraine to procure and en-

force the Rider patent. Moraine seeks treble damages based on expenses it incurred in procuring and enforcing the invalid Rider patent. Count V alleges that Atlas fraudulently rescinded a 1960 agreement with Moraine which would have required Atlas to pay Moraine royalties on the Rider invention regardless of whether a patent was issued. It further alleges that Atlas then fraudulently induced Moraine to enter into the 1962 option contract which called for a lower royalty rate and made royalty payments contingent on Moraine's obtaining a patent on the Rider invention. Moraine claims royalties lost due to Atlas' alleged fraud.

Moraine has moved to strike certain of the Atlas defendants' affirmative defenses. The first alleges that Moraine fraudulently induced Atlas to enter into the exclusive license under the Rider patent and is hence estopped to complain about Atlas' misconduct. The fourth defense is based on "unclean hands", due to Moraine's alleged misrepresentations and other misconduct in procuring and enforcing the Rider patent. The eighth defense, directed only to Count V of the complaint, alleges that Moraine fraudulently induced Atlas to enter the 1960 royalty agreement and that Atlas' rescision of that agreement limits any damages Moraine suffered. The ninth affirmative defense alleges that Moraine knew of facts which would render the Rider patent invalid and is therefore estopped from complaining of any injury incurred by its efforts to procure, enforce and exploit the patent.

These four affirmative defenses are based on allegations that Moraine or the other counter-defendants engaged in acts of fraud or other misconduct in procuring and enforcing the Rider patent and related agreements, such as the 1962 option contract. Atlas and Moraine have litigated the fraud questions related to the validity of the Rider patent in the Eastern District of Michigan. The court granted summary judgment against Atlas, declaring the Rider patent invalid; the court also awarded damages

to Moraine based on the unconscionable conduct of Atlas in withholding material facts from Moraine and from the Patent Office. A review of the complaint in that case and the various briefs and documents filed by the parties (most of which have also been filed in this court as exhibits) demonstrates that each of the fraud issues raised by Atlas in this suit concerning the validity of the Rider patent was raised and decided adversely to Atlas in the Michigan suit. We need look no further than the opinion of Judge Joiner which accompanied his entry of final judgment on November 5, 1973. He stated:

> Atlas insists Moraine fraudulently procured the patent. This court has already found as fact that allegation to be untrue, and the offer of proof regarding Moraine's alleged fraud is rejected, it being mostly irrelevant and raising no new issues not already considered by the court a year ago.

Furthermore, in order to reach a judgment on behalf of Moraine, the Michigan court necessarily decided the question of Moraine's fraud. For if Moraine's fraud had been established by Atlas, this would have barred any relief for Moraine under the doctrine of unclean hands. Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 244, 54 S.Ct. 146, 78 L.Ed. 293 (1933). If such defenses were available, they should have been pleaded and litigated by the parties under F.R.Civ.P. 8(c) and 12(b), and a general judgment constitutes an adjudication of those issues. Huddleston v. Dwyer, 137 F.2d 383, 385 (10th Cir. 1943); IB Moore's Federal Practice (2d Ed.), ¶ 0.443 [4], p. 3913. However, the Michigan court apparently looked at the 1960 agreement only in passing, as apparently occurred in the earlier infringement case in this District also. Thus the matters raised in Atlas' eighth affirmative defense are not precluded.

Since the judgment in the Michigan case is now final and on the merits, it constitutes estoppel on those issues in this case. Canaan Products, Inc. v. Edward Don & Co., *supra*. In so deciding, we reject Atlas' claim that the Michigan court committed reversible errors. That claim must be addressed to the Sixth Circuit Court of Appeals. Thomas v. Consolidation Coal Co., 380 F.2d 69, 77 (4th Cir. 1966).

Except for Atlas' eighth affirmative defense, the others depend on the fraud allegations decided in the Michigan case and hence they are legally insufficient. Atlas' first, fourth and ninth affirmative defenses will therefore be stricken. F.R.Civ.P. 12(f).

Atlas has also filed five counterclaims against Moraine, Triggs, Kramer and Rider. The first counterclaim alleges that the counter-defendants engaged in fraudulent acts and other misconduct in order to procure the Rider patent. They then allegedly conspired to wrongfully exploit the patent by filing various actions, including the present one, and by asserting false royalty claims against Atlas.

Atlas' second counterclaim alleges that Moraine fraudulently induced Atlas to enter into the 1960 royalty agreement, whereby Atlas agreed to pay royalties in order to use the then-unpatented Rider process. Then, after Atlas had rescinded the 1960 agreement, Moraine allegedly fraudulently induced Atlas to enter into the 1962 option contract whereby Atlas agreed to pay royalties in order to acquire a license on the Rider patent, when issued.

The third counterclaim realleges the facts of the first two. Atlas contends that the counter-defendants' conduct constituted a violation of § 1 and § 2 of the Sherman Anti-Trust Act.

In the fourth counterclaim, Atlas contends that the 1962 option contract required it to pay royalties only for its use of the Rider patent but that the counter-defendants have allegedly forced Atlas to pay royalties on products which do not make use of the Rider process. Atlas alleges that this attempt to extend the patent monopoly is a violation of § 1 and § 2 of the Sherman Act. Atlas'

fifth counterclaim realleges the same facts and asserts that the counter-defendants' conduct constituted unfair competition under Illinois law.

When the first and third counterclaims are stripped of the fraud allegations which have been decided in the Michigan case, they fail to state a claim for relief. Each of these counterclaims will therefore be dismissed. F.R.Civ.P. 12(b)(6). The second counterclaim does not seem to involve the issues litigated in Michigan, however, and survives for the same reason as does Atlas' eighth affirmative defense.

 Atlas' fourth counterclaim must also be dismissed for failure to state a claim for relief. Atlas has failed to include any allegation of the fact or the manner in which competition was injured by counter-defendants' conduct. Nor has Atlas pleaded any allegation that would bring this conduct within any antitrust violation. In Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969), the Supreme Court held that compelling a licensee to pay royalties on products which do not use the patent may constitute a violation of the antitrust laws, if the normal ingredients of a Sherman Act violation are established. Such conduct by a patentee is not a *per se* violation of the antitrust laws, however. *Id.*, 395 U.S. at 140; Bendix Corp. v. Balax, Inc., 471 F.2d 149, 154 (7th Cir. 1972). One who seeks to establish an antitrust violation based on such misconduct must allege and prove the requisite effect on competition and otherwise prove the elements of a § 1 or § 2 violation. Atlantic Heel Co. v. Allied Heel Co., 284 F.2d 879, 883–884 (1st Cir. 1960); Encore Stores, Inc. v. May Dept. Stores, 164 F.Supp. 82, 83–84 (S.D.Cal.1958).

Atlas' fifth counterclaim, which includes all allegations of the first four counterclaims, is based on the Illinois law of unfair competition. Although most of the fraud issues have been litigated between these parties, the fifth counterclaim may survive as a diversity action. Since the previous counts on which it is based have been stricken, however, it must be re-pleaded.

One guiding principle through the maze of pleadings which has grown up in this case is that this court cannot decide issues between parties which have already been finally decided between them by another court or which should have been decided there as compulsory counterclaims. Another guiding principle, perhaps somewhat inconsistent with the foregoing, is that anti-trust issues should ordinarily not be decided by summary procedures. Cf. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); Premier Electrical Construction Co. v. Miller-Davis Co., 422 F.2d 1132, 1138–1139 (7th Cir. 1970). This court has attempted to apply both of these principles in this decision and will continue to do so up to and through trial. In an attempt to isolate the remaining genuine issues, this court will enter a final pre-trial order today. Since so much of the trial in the case at bar will depend on what was decided in the Michigan case and what happens to that case on appeal, the court will also consider the feasibility of transferring this case to the Eastern District of Michigan or postponing any trial here until the Sixth Circuit Court of Appeals has ruled.

It is therefore ordered, adjudged and decreed that

1. The motions of the defendants to dismiss the Second Amended Complaint or for summary judgment thereon are denied.

2. The plaintiff's motion to strike the fifth affirmative defense of the Plough defendants is denied and the plaintiff's motion to dismiss the second counterclaim of the Plough defendants is granted.

3. The plaintiff's motion to strike the first, fourth and ninth affirmative defenses of the Atlas defendants (ICI America, Inc.) is granted, and the plaintiff's motion to dismiss the first, third,

fourth and fifth counterclaims of these defendants is granted, but defendants may replead the fifth counterclaim.

4. The remaining motions discussed hereinabove are denied.

5. The parties are granted one week in which to file amended pleadings to conform to this decision and one additional week thereafter to file replies to the remaining counterclaims and affirmative defenses.

6. A final pre-trial order will be entered today, to be complied with within twenty days.